CARLTON FIELDS JORDEN BURT, LLP
Meredith M. Moss (State Bar No. 185357)
mmoss@carltonfields.com
Valerie D. Escalante (State Bar No. 281386)
vescalante@carltonfields.com
2000 Avenue of the Stars
Suite 530, North Tower
Los Angeles, California 90067
Telephone: (310) 843-6300
Facsimile: (310) 843-6301

CARLTON FIELDS JORDEN BURT, PA
Frank G. Burt (*pro hac vice*)
fburt@carltonfields.com
W. Glenn Merten (*pro hac vice*)
gmerten@carltonfields.com
Brian P. Perryman (*pro hac vice*)
bperryman@carltonfields.com
1025 Thomas Jefferson Street, NW
Suite 400 East
Washington, DC 20007
Telephone: (202) 965-8100
Facsimile: (202) 965-8104

Attorneys for Plaintiff
AMERICAN BANKERS MANAGEMENT COMPANY, INC.

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| AMERICAN BANKERS MANAGEMENT COMPANY, INC., <br><br> Plaintiff, <br> vs. <br><br> ERIC L. HERYFORD, in his official capacity as DISTRICT ATTORNEY, TRINITY COUNTY, <br><br> Defendant. | Case No. 2:16-CV-00312-KJM-KJN <br><br> **FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF FOR:** <br><br> **(1) VIOLATION OF DUE PROCESS UNDER THE FOURTEENTH AMENDMENT TO THE UNITED STATES CONSTITUTION; AND** <br><br> **(2) VIOLATION OF 42 U.S.C. § 1983** |

Plaintiff American Bankers Management Company, Inc. ("American Bankers") brings suit against defendant Eric L. Heryford, in his official capacity as District Attorney for Trinity County, California ("the District Attorney"), and, in support thereof, alleges the following:

## JURISDICTION AND VENUE

1. This suit arises under the Fourteenth Amendment of the United States Constitution, as well as 42 U.S.C. § 1983.  Because the suit concerns civil rights, this Court has subject-matter jurisdiction under both 28 U.S.C. §§ 1331 and 1343.

2. Venue is proper under 28 U.S.C. §§ 84(b) and 1391(a)(1) because the sole defendant resides in this District, and under § 1391(a)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District.

3. Pursuant to L.R. 120 and the Court's Automated Case Assignment Plan, because this civil action arises in Trinity County, it should be adjudicated in the United States District Court sitting in Sacramento.

## PRELIMINARY STATEMENT

4. On September 4, 2015, the District Attorney, represented by for-profit, contingency-fee private counsel, filed suit on behalf of the People of the State of California against Discover Financial Services, Discover Bank, DFS Services, LLC, and American Bankers Management Company, Inc. (collectively, "the Companies"), alleging violations of the "fraudulent," "unlawful," and "unfair" prongs of California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200 *et seq*. ("the UCL Suit").

5. The UCL Suit was originally filed in the Superior Court of the State of California, Trinity County, styled as *The People of the State of California ex rel. Eric L. Heryford, District Attorney, Trinity County v. Discover Financial Services et al.*, No. 15CV079.  On February 19, 2016, however, the District Attorney voluntarily dismissed the UCL Suit in its entirety.

6. The District Attorney and his private counsel re-filed the UCL Suit in the United States District Court for the Eastern District of California on March 4, 2016, where it is pending as *The People of the State of California ex rel. Eric L. Heryford, District Attorney, Trinity County v. Discover Financial Services et al.*, No. 2:16-CV-00468-KJM-CMK.

7. In the UCL Suit, the District Attorney alleges that the Companies engaged in deceptive marketing and sales practices in connection with so-called "ancillary products" offered in connection with Discover-issued credit cards. For this alleged conduct, the UCL Suit demands injunctive and declaratory relief, restitution, civil penalties, attorneys' fees and costs, and prejudgment interest.

8. The District Attorney's contingency-fee arrangement gives his private counsel a direct and substantial financial stake in the imposition of civil penalties and restitution against the Companies and in the UCL Suit's ultimate outcome. That arrangement compromises the integrity and fairness of the prosecutorial motive and the public's faith in the judicial process.

9. The UCL Suit thus violates the Companies' due process right under the Fourteenth Amendment of the United States Constitution to a neutral government prosecutor.

10. The UCL Suit is no ordinary civil lawsuit, but is a quasi-criminal law enforcement action brought in the name of the People of the State of California.

11. The UCL Suit involves potential civil penalties not otherwise available to private litigants. Specifically, the UCL Suit seeks to impose what the District Attorney characterizes as "significant" civil penalties on the Companies under Bus. & Prof. Code §§ 17206 and 17206.1.

12. The UCL Suit also threatens both the Companies' and the public's constitutionally-protected free speech rights. Not only do the Companies have a right under the First Amendment of the United States Constitution to engage in commercial speech – speech that the Consumer Financial Protection Bureau has determined to be nonfraudulent, lawful, and fair – the public has a First Amendment interest in having such material available to it.

13. The District Attorney's retention of for-profit, contingency-fee private counsel to prosecute the UCL Suit is an improper delegation of prosecutorial authority and discretion that has violated, and continues to violate, the Companies' federal civil rights.

14. Acting under color of state law, the District Attorney's actions have caused injury redressable under 42 U.S.C. § 1983.

15. American Bankers seeks relief that is purely prospective in nature and, at this time, abjures relief that is retrospective in nature.

## PARTIES

16. Plaintiff American Bankers Management Company, Inc. is a Florida corporation with its principal place of business in Miami, Florida.

17. Defendant Eric L. Heryford is the District Attorney for Trinity County, California.

18. The District Attorney is sued in his official capacity and is subject to the Court's jurisdiction under *Ex parte Young*, 209 U.S. 123 (1908).

## FACTS COMMON TO CAUSES OF ACTION

**I.    The District Attorney's Retention Of For-Profit Private Counsel.**

19. Under Bus. & Prof. Code § 16759, "[a]ll those powers granted to the Attorney General as head of a department ... shall be granted to the district attorney of any county when that district attorney reasonably believes that there may have been a violation of ... Chapter 5 (commencing with Section 17200) of this part[.]"  Under Bus. & Prof. Code § 17204, "[a]ctions for relief pursuant to [Chapter 5] shall be prosecuted exclusively in a court of competent jurisdiction by the Attorney General or a district attorney … in the name of the people of the State of California upon their own complaint[.]"

20. The UCL Suit is a law enforcement action commenced pursuant to these statutes. A true and correct copy of the UCL Suit's operative complaint is attached hereto as Exhibit A.

21. Neither the District Attorney nor his office are actually prosecuting the UCL Suit. Instead, on or about August 28, 2015, the District Attorney executed a contingency-fee retainer agreement (entitled "Contract for Services Agreement") with multiple private law firms, including Baron & Budd, P.C., Carter Wolden Curtis, LLP, and Golomb & Honik, P.C. (collectively, "the Law Firms").  A true and correct copy of the District Attorney's contingency-fee agreement is attached hereto as Exhibit B.

22. Paragraph 9.B of the contingency-fee agreement provides that, "if there is a recovery as a result of the Action," *i.e.*, the UCL Suit, then "the Law Firms' will be paid a contingency fee of 30% of the Net Recovery, which shall include damages, restitution, disgorgement, civil and/or statutory fines or penalties, *cy pres* or the value of injunctive relief."

23. Paragraph 4.A of the agreement denominates the Law Firms "Independent

1 Contractors" with "the authority and responsibility to control and direct the performance and
2 details of the work and services required under this Agreement," subject to the District
3 Attorney's "general right" to "inspect work in progress to determine whether, in the District
4 Attorney's opinion, the services are being performed by the Law Firms in compliance with this
5 Agreement." Paragraph 4.B of the agreement further specifies that the Law Firms and the Law
6 Firms' employees and agents "are not by reason of this Agreement, agents or employees of
7 Trinity County for any purpose."

8     24.     The District Attorney's participation in the UCL Suit is significantly diminished
9 or nonexistent as a result of his bargain with the Law Firms. During the October 20, 2015
10 meeting of the Trinity County Board of Supervisors, the District Attorney emphasized that he
11 and his office would not be materially involved in the UCL Suit's management, which could
12 yield great financial rewards for Trinity County – what the District Attorney bluntly
13 characterized as "a lot of upside with not a lot of downside."

14     25.     According to a video-recording of the meeting, the District Attorney stated:

- "I wanted to give the Board an update and I wanted you to hear this from me before anyone else. The D.A.'s office, basically myself, we have retained some national firms to do some civil litigation and this litigation has the potential to have some state and national media attention as well as some financial, maybe, benefit to the county at some point. Basically, I've retained these firms on a contingency basis so there is no cost to the county. They will be taking care of the legal fees and the expert fees that may be involved as these cases progress."

- "What the code section allows under that chapter is civil penalties of $2,500 for each violation. So there is potential for potentially significant civil penalties for that conduct. It's also possible the Attorney General's Office may have some interest in these cases at some point. They could intervene and we would work with them. To me, part of the benefit is it gives Trinity County a big seat at the table in these cases, so that when it comes time to resolve them and talk about that."

- "And just so you know, one of the benefits is we retain these firms, you know, it's minimal, it's not going to be additional work for my staff basically. As D.A., I'll have final say on where these cases go and how they proceed but these firms, they're going to handle the litigation part of this. To me, there's a lot of upside with not a lot of downside for my office or the county."

    26.     While claiming that he will have oversight of the UCL Suit and other for-profit lawsuits managed by the Law Firms, the District Attorney also has publicly represented to the

local newspaper that, because of his contingency-fee agreement, prosecution of those lawsuits will not "interfere" with his caseload, and that the suits will not cost Trinity County or his office any money because they are being handled by the Law Firms.  At the same time, the District Attorney emphasized that there is "potential for substantial benefit for the county" and that as "the case moves forward it gives our county a seat at the table."  A true and correct copy of the Trinity Journal article dated October 28, 2015 is attached hereto as Exhibit C.

27. The minimization of the District Attorney's role in the UCL Suit is precisely the result the Law Firms desire.  For example, in touting its representation of "public entity" clients, the Baron & Budd law firm's website (https://baronandbudd.com/public-entities/) claims that its attorneys "operate alongside" and "at the direction of" the client, nonetheless boasting:

> An important benefit of this unique and close relationship is that it minimizes the burden of litigation on the employees and staff of Public Entities.  Bolstered by our superior team members and resources, we are able to perform most of the day-to-day litigation tasks, thus helping you stay focused on your important work, free from the demands of litigation.  It is our intention to do whatever is required – from the mundane gathering and copying of documents to the complex work of full briefings, oral arguments, and trial.  *Our focus is fully managing the litigation* so that you, the Public Entity, can carry on the critical business of representing your community without distractions.  Even when a case is resolved, whether through settlement, ADR, or trial, Baron & Budd's support remains steadfast.  We are there to provide assistance in writing press releases, advising you in regard to community notification and directing you to the right vehicles for disbursement of any funds obtained from a positive result in the case.

(Emphasis added.)

28. As stated on their website, through "the continued representation of Public Entities in deceptive trade practices concerning credit card payment protection plans," Baron & Budd attorneys believe they are "sending a message" to the Companies.

**II.  The Use Of For-Profit Private Counsel Violates Basic Tenets Of Due Process.**

29. The exercise of police powers is a core function of sovereign governments.  The District Attorney has no authority to delegate his police powers or to permit financially interested persons to exercise those powers.

30. In prosecuting a UCL law enforcement action, private counsel acting on behalf of a public entity such as the District Attorney are entrusted with the unique coercive power of the

5
FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

1 government and must refrain from abusing that power by failing to act in an evenhanded manner.

2   31. It is a bedrock principle of due process that an attorney prosecuting a public action on behalf of the government must not be motivated solely by a desire to win a case, but instead owes a duty to the public to ensure that justice will be done. Critical discretionary decisions may not be delegated to private counsel possessing an interest in the case, but instead must be made by neutral government attorneys.

  32. A heightened standard of neutrality is required for private counsel prosecuting UCL law enforcement actions on behalf of the government. A lawyer cannot escape the heightened ethical requirements of one who performs governmental functions merely by declaring he is not a public official. The responsibility follows the job: if the Law Firms are performing tasks on behalf of and in the name of the government to which greater standards of neutrality apply, they must adhere to those standards.

  33. Under the California Supreme Court's decisions in *County of Santa Clara v. Superior Court*, 50 Cal. 4th 35 (2010), and *People ex rel. Clancy v. Superior Court*, 39 Cal. 3d 740 (1985), for purposes of evaluating the propriety of a contingency-fee agreement between a public entity and private counsel, the neutrality rules applicable to criminal prosecutors are equally applicable to public attorneys. Because public attorneys prosecuting noncriminal matters are subject to the same ethical conflict-of-interest rules applicable to public attorneys prosecuting criminal matters, outside the context of *ordinary* civil litigation, there is a class of civil actions that demands the representative of the government to be absolutely neutral.

  34. Although not necessarily so in *every* law enforcement action involving private counsel, in the particular circumstances of *this* UCL Suit, that requirement precludes the use of a contingency-fee agreement. Contingency-fee agreements between public prosecutors and private counsel can violate the duty of neutrality because the public prosecutors, who represent the interest of the general public, may compromise their neutrality by possessing a financial stake in the outcome of cases where they are only paid if they "win." "As any lawyer knows, under a contingency-fee arrangement an attorney effectively bets everything on attainment of victory in litigation." Martin H. Redish, *Private Contingent Fee Lawyers and Public Power:*

6
FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

*Constitutional and Political Implications*, 18 Sup. Ct. Econ. Rev. 77, 79-80 (2010).

35. By linking an attorney's financial recovery to the success of the litigation, contingency-fee agreements provide an incentive for private counsel to seek maximum penalties and restitution rather than what justice actually requires. As the California District Attorneys Association articulated in an *amicus curiae* brief filed with the California Supreme Court:

> Acting as investors in a for-profit venture, they have invested untold dollars and hours in this commercial enterprise which could all be for naught if this lawsuit fails. It would be illogical to suggest that the contingent fee outside counsel, who have been hired because of their competence, experience, expertise, *and* their financial resources, have not placed themselves in positions where they are able to exercise substantial influence over the decisions made by the government. Such influence extends not just to the ordinary and mundane (although, in the aggregate, very significant) aspects of the litigation but also to critical, fundamental strategic and tactical matters regarding substantive issues. It would be contrary to human nature to believe that the positions taken by the contingent fee attorneys regarding these key issues when advocating for the adoption of their views by the government attorneys are completely unaffected by the direct, personal, and substantial pecuniary interests they, and they alone on the plaintiffs' team, have gambled on a successful outcome of this litigation. Their economic interests color everything they do in connection with this litigation.

Brief of *Amicus Curiae* California District Attorneys Association at 21-22, *County of Santa Clara v. Superior Court* (2010) 50 Cal. 4th 35 (No. S163681), 2009 WL 1541982, at *21-22.

36. This is especially problematic in a UCL law enforcement action. The California District Attorneys Association concluded that "it is impossible to understate the importance to CDAA and prosecutors of maintaining public confidence in the fair and impartial enforcement of key civil law enforcement statutes such as the UCL and the FAL. CDAA believes that court approval of contingent fee agreements in civil law enforcement cases giving contingent fee outside counsel direct, personal, and substantial financial stakes in the outcome of commercial cases will greatly undermine public confidence in the fair and equitable use of those statutes with disastrous consequences." *Id.* at 36.

37. In *Santa Clara*, a non-UCL public-nuisance abatement action, the California Supreme Court "recognized that the interests invoked in [*Clancy*] were akin to the vital interests implicated in a criminal prosecution, and thus invocation of the disqualification rules applicable to criminal prosecutors was justified." 50 Cal. 4th at 51-52. It further recognized that "if those

1  rules are found to be equally applicable in the case now before us, disqualification of the private
2  attorneys hired to assist the public entities similarly would be required." *Id.* at 52. The *Santa*
3  *Clara* court found that the case before it involved "a qualitatively different set of interests –
4  interests that are not substantially similar to the fundamental rights at stake in a criminal
5  prosecution," a "distinguishing circumstance" the court found "to be dispositive." *Id.* at 54; *see*
6  *also id.* at 56 ("this case is closer on the spectrum to an ordinary civil case than it is to a criminal
7  prosecution"); *id.* at 51 (distinguishing *Clancy*, which "was guided, in large part, by the
8  circumstances that the public-nuisance action pursued by Corona implicated interests akin to
9  those inherent in a criminal prosecution").

10  38.   That is precisely the "dispositive" question here: if the interests implicated in the
11  UCL Suit are "akin to the vital interests implicated in a criminal prosecution," then
12  considerations of due process require the Law Firms' disqualification. If the Court finds that the
13  UCL Suit, although civil in nature, is sufficiently akin to a criminal prosecution initiated to
14  penalize the Companies – *viz.*, is a quasi-criminal enforcement action – then the Court must find
15  a violation of the Companies' due process rights under the framework established in *Santa Clara*
16  and *Clancy*. After all, the *Santa Clara* court recognized, it is "beyond dispute that due process
17  would not allow for a criminal prosecutor to employ private cocounsel pursuant to a contingent-
18  fee arrangement that conditioned the private attorney's compensation on the outcome of the
19  criminal prosecution." *Id.* at 51 n.7. In that circumstance, "such a method of compensation
20  would be categorically barred." *Id.* at 51.

21  39.   In multiple key respects, the UCL Suit is wholly unlike ordinary civil litigation. It
22  is much closer on the spectrum of civil litigation to the quasi-criminal enforcement action
23  prosecuted in *Clancy* than it is to the "ordinary civil case" prosecuted in *Santa Clara*. Indeed, a
24  public civil action brought pursuant to the UCL is "fundamentally a law enforcement action
25  designed to protect the public." *People v. Pacific Land Research Co.*, 20 Cal.3d 10, 17 (1977).

26  40.   ***First***, the District Attorney's private counsel are appearing as representatives of
27  the public and not as counsel for the government acting as an ordinary party in a civil lawsuit.
28  "There can be no question, therefore, that the present case is being prosecuted on behalf of the

1  public, and that accordingly the concerns … identified in *Clancy* as being inherent in a public
2  prosecution are, indeed, implicated in the case now before us." *Santa Clara*, 50 Cal. 4th at 55.

3        41.    ***Second***, the UCL Suit is unlike ordinary civil litigation because it seeks civil
4  penalties under Bus. & Prof. Code §§ 17206 and 17206.1.  Such penalties are not available to the
5  ordinary civil litigant, only a public prosecutor.  Because UCL civil penalties "penalize a
6  defendant for past illegal conduct" and have a "public, penal objective," there is no discernable
7  difference in a UCL law enforcement action "between the [public prosecutor's] seeking criminal
8  penalties or civil penalties." *State v. Altus Fin., S.A.*, 36 Cal. 4th 1284, 1308 (2005).

9        42.    Civil penalties under the UCL may not trigger many of the heightened legal
10 protections applicable to criminal proceedings, but that does not mean they are any less quasi-
11 criminal in nature.  The same could be said, for example, of punitive damages, which are
12 indisputably quasi-criminal.

13       43.    Compensation to the Law Firms for their efforts in the UCL Suit will depend
14 directly on the amount of restitution paid by and civil penalties levied against the Companies.
15 The contingency-fee arrangement thus creates a powerful incentive for the Law Firms to fixate
16 on maximizing the penalties recovered from the Companies.  Moreover, because of their
17 financial stake in the UCL Suit, the Law Firms will be disinclined to exercise restraint, such as
18 by limiting the scope of the Suit if it would advance justice or the public interest to do so.

19       44.    As one commentator explained:

> Imagine a coercive civil action – *i.e.*, an action to impose civil penalties – brought by the state against a private actor, where full time state attorneys who are paid solely on a contingent fee basis represent the state.  Here, the constitutional implications may not be as readily obvious as they are in the context of a criminal prosecution.  Nevertheless, the two situations should be treated similarly, for a number of reasons.  Civil coercive actions trigger most of the same political and constitutional concerns implicated by criminal prosecutions.  True, civil actions do not implicate the array of special constitutional protections traditionally associated with criminal prosecutions, such as the right to confront accusers or the requirement of proof beyond a reasonable doubt.  The fact remains, however, that the potential loss of property, as much as the loss of liberty, triggers the protections of procedural due process.  When the state acts coercively against its citizens through the judicial process, its obligations to act in good faith in pursuit of the public interest, rather than out of potentially distorting personal motivations, the dictates of due process would seem to be equally applicable.


Redish, *supra*, 18 Sup. Ct. Econ. Rev. at 104.

45. ***Third***, the same is true of the injunctive relief the UCL Suit requests. When a public prosecutor "seeks an injunction that will protect the public and prevent defendants from committing future unlawful acts, he is fulfilling primarily a law enforcement function." *Altus Fin.*, 36 Cal. 4th at 1308. The UCL Suit is unlike ordinary civil litigation because it is a government lawsuit seeking to, by the use of prospective injunctive relief, curtail the Companies' free speech right under the First Amendment of the United States Constitution to market and sell "ancillary products" to cardholders as the Companies see fit.

46. The First Amendment forbids a public official to attempt to suppress the protected speech of private persons by threatening that legal sanctions will at his urging be imposed unless there is compliance with the official's demands. The First Amendment requires heightened scrutiny whenever the government creates a regulation of speech because of disagreement with the message it conveys. Commercial speech is no exception.

47. That is especially true where, as here, the District Attorney seeks to suppress the very forms of speech the Consumer Financial Protection Bureau has determined to be nonfraudulent, lawful, and fair. The UCL Suit's allegations were long-ago resolved by, among other settlements, a consent order jointly issued in September 2012 by the Consumer Financial Protection Bureau and Federal Deposit Insurance Corporation ("Consent Order"). A true and correct copy of the Consent Order is attached hereto as Exhibit D.

48. Like the UCL Suit, the federal agencies alleged that the marketing, sales, and operation of the "ancillary products" was designed to deceive cardholders. In addition to ordering restitution and civil penalties, the agencies required comprehensive prospective relief designed to ensure that the allegedly deceptive conduct – the identical conduct alleged in the UCL Suit – would not recur. The Consent Order implemented a carefully reticulated scheme of corrective actions, created new compliance management and internal control systems, established a compliance audit program and oversight committee, mandated progress reports and recordkeeping, and made its provisions enforceable by the agencies. Much of the Consent Order regulates the forms of speech used in connection with the marketing of the "ancillary products."

10
FIRST AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

49. In July 2015, the Consent Order was terminated by another order ("Termination Order") determining "that Discover fulfilled its obligations under the CONSENT ORDER." A true and correct copy of the Termination Order is attached hereto as Exhibit E.

## FIRST CLAIM FOR RELIEF

## Declaratory Judgment and Injunctive Relief – Violation of Due Process

## Under the Fourteenth Amendment to the United States Constitution

50. Each of the allegations of the preceding paragraphs are realleged and incorporated by reference, as if set forth fully herein.

51. The Due Process Clause of the Fourteenth Amendment to the United States Constitution, amend. XIV, § 1, provides that states shall not "deprive any person of life, liberty, or property, without due process of law."

52. American Bankers enjoys a constitutional guarantee of due process of law under the Fourteenth Amendment.

53. Principles of due process apply to law enforcement actions like the UCL Suit.

54. A fair and impartial trial in a fair tribunal is a basic requirement of due process. It is the obligation of the public prosecutor to respect this mandate.

55. The District Attorney, in his official capacity as District Attorney for Trinity County and acting under color of state law, has entered into or otherwise approved an illegal contingency-fee agreement by hiring for-profit private counsel to prosecute the UCL Suit.

56. In addition, or in the alternative, the District Attorney has improperly ceded management of and effective control over prosecution of the UCL Suit to the Law Firms.

57. As a direct and proximate result of the District Attorney's actions, prosecutorial authority and discretion have been unfairly and unlawfully delegated to private counsel having an improper, clear, direct, and substantial financial stake in the UCL Suit's outcome.

58. As a direct and proximate result of the District Attorney's actions, the UCL Suit's fairness has been compromised and the right to due process has been infringed.

59. The ongoing violation of the right to due process has caused actual and irreparable harm and will continue causing additional harm unless and until this Court grants the

1  relief to which American Bankers is entitled.

2      60. The Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 because an actual controversy within its jurisdiction is ripe for a declaration of the parties' rights and legal obligations.

5      61. The Companies have no adequate remedy at law and have suffered, and will continue to suffer, irreparable injury associated with the cost of defending the unlawful UCL Suit and the risk of an inconsistent or duplicative adjudication. Constitutional violations cannot be adequately remedied through damages and therefore constitute irreparable injury.

## SECOND CLAIM FOR RELIEF

### 42 U.S.C. § 1983 – Violation Of Due Process

11      62. Each of the allegations of the preceding paragraphs are realleged and incorporated by reference, as if set forth fully herein.

13      63. The District Attorney, in his official capacity as District Attorney for Trinity County and acting under color of state law, has entered into or otherwise approved an improper contingency-fee agreement by hiring for-profit private counsel to prosecute the UCL Suit.

16      64. In addition, or in the alternative, the District Attorney has improperly ceded management of and effective control over prosecution of the UCL Suit to the Law Firms.

18      65. As a direct and proximate result of the District Attorney's actions, prosecutorial authority and discretion have been unfairly and improperly delegated to private counsel having a clear, direct, and substantial financial stake in the UCL Suit's outcome.

21      66. As a direct and proximate result of the District Attorney's actions, the UCL Suit's fairness has been compromised and the right to due process has been infringed.

23      67. The ongoing violation of the right to due process has caused actual and irreparable harm and will continue causing additional harm unless and until this Court grants the relief to which American Bankers is entitled.

26      68. This Court is authorized to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 because an actual controversy within its jurisdiction is ripe for a declaration of the parties' rights and legal obligations.

69. The Companies have no adequate remedy at law and have suffered, and will continue to suffer, irreparable injury associated with the cost of defending the unlawful UCL Suit and the risk of an inconsistent or duplicative adjudication. Constitutional violations cannot be adequately remedied through damages and therefore constitute irreparable injury.

**PRAYER FOR RELIEF**

WHEREFORE, American Bankers prays that the Court:

a) Enter a judgment declaring that the District Attorney, in his official capacity and acting under color of state law, has violated American Bankers' right to due process under the Fourteenth Amendment of the United States Constitution by delegating the coercive power of the government to private counsel having an improper, clear, direct, and substantial financial stake in the UCL Suit's outcome.

b) Enter preliminary and permanent injunctive relief allowing the UCL Suit to proceed in the state court but prohibiting the District Attorney from employing the Law Firms to prosecute the UCL Suit under their existing contingency-fee agreement.

c) Award the costs of suit and reasonable attorneys' fees in accordance with 42 U.S.C. § 1988.

d) Award all other relief that this Court deems just and proper.

Dated: March 7, 2016               CARLTON FIELDS JORDEN BURT, LLP

                                   By: /s/ *Meredith M. Moss*
                                        Meredith M. Moss

                                   Attorneys for Plaintiff
                                   AMERICAN BANKERS MANAGEMENT
                                   COMPANY, INC.