1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                        FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   AMERICAN BANKERS                         No.  2:16-cv-00312-KJM-KJN
     MANAGEMENT COMPANY, INC.,
12
                      Plaintiff,
13                                            ORDER
           v.
14
     ERIC L. HERYFORD,
15
                      Defendant.
16

17

18              This case challenges the constitutionality of contingency-fee agreements between

19   private counsel and county district attorneys who bring cases against corporate defendants.

20   Plaintiff American Bankers Management Company, Inc. ("plaintiff" or "ABMC"), filed this

21   action, alleging one such agreement infringes on its Fourteenth Amendment due process right to a

22   neutral and impartial trial.  First Amended Compl. (FAC), ECF No. 12.  Defendant Eric Heryford,

23   the District Attorney (DA) of Trinity County, California, filed a motion to dismiss ABMC's

24   claim.  Mot., ECF No. 21.  The court held a hearing on April 22, 2016, at which Brian Perryman

25   appeared for ABMC and Roland Tellis appeared for DA Heryford.  ECF No. 32.

26              For reasons explained below, the court GRANTS defendant's motion to dismiss,

27   with leave to amend.

28   /////

                                                1

I.      FACTUAL ALLEGATIONS

        A.      Separate UCL Suit

                On September 4, 2015, DA Heryford filed suit on behalf of the People of the State of California against several corporations, including ABMC, alleging violations of the "fraudulent," "unlawful," and "unfair" prongs of California's Unfair Competition Law (UCL), Bus. & Prof. Code § 17200 *et seq.* (the UCL Suit).  FAC ¶ 4.  The UCL Suit was first filed in Trinity County Superior Court, then later dismissed and refiled in this court on March 4, 2016. *Id.* ¶¶ 5–6.  In the refiled suit, DA Heryford alleges the corporations deceptively marketed and sold "ancillary products" in connection with Discover-issued credit cards.  *Id.* ¶ 7.  For this alleged conduct, DA Heryford has demanded injunctive and declaratory relief, restitution, civil penalties, attorneys' fees and costs, and prejudgment interest.  *Id.*  This suit is still pending.  *See Heryford v. Discover Financial Services*, *et al.*, No. 16–468 (E.D. Cal. filed March 4, 2016).

        B.      Contingency-Fee Agreement

                Prior to filing suit, DA Heryford executed a contingency-fee agreement with the law firms of Baron & Budd, P.C., Carter Wolden Curtis, LLP, and Golomb & Honik, P.C. ("Barron & Budd" or "law firms"), for the purpose of assisting with the UCL Suit.  *Id.* ¶ 21.  In the agreement, DA Heryford and the law firms agreed that if there were a recovery as a result of the UCL Suit, "the Law Firms' w[ould] be paid a contingency fee of 30% of the Net Recovery." *Id.* ¶ 22.  The parties also agreed that the law firms would be "Independent Contractors" with "the authority and responsibility to control and direct the performance and details of the work and services required under this Agreement," subject to the DA's "general right" to "inspect work in progress to determine whether, in the DA's opinion, the services are being performed by the [l]aw [f]irms in compliance with th[e] Agreement."  *Id.* ¶ 23.  The law firms were not "by reason of this Agreement, agents or employees of Trinity County for any purpose."  *Id.*

        C.      District Attorney's Public Statements

                DA Heryford made statements to the public regarding his work with Barron & Budd on the UCL Suit.  During an October 20, 2015 meeting of the Trinity County Board of Supervisors, Heryford emphasized that he and his office would not be materially involved in the

2

1  UCL Suit's management, which could yield great financial rewards for Trinity County; the DA

2  characterized the arrangement as having "a lot of upside with not a lot of downside." *Id.* ¶ 24.

3  As a result of the agreement, DA Heryford explained the UCL Suit would not constitute

4  "additional work" for him and his staff. *Id.* ¶ 25.  Although DA Heryford said he would "have

5  final say on where [] cases go and how they proceed," Barron & Budd was responsible for

6  "handl[ling] the litigation part." *Id.* ¶ 25.  DA Heryford also spoke to a local newspaper a week

7  later, saying because of the contingency-fee agreement, prosecution of the UCL Suit would not

8  "interfere" with his caseload, and the suit would not cost Trinity County or his office any money

9  because Baron & Budd was handling it. *Id.* ¶ 26.

10         D.      Barron & Budd's Statements

11              Baron & Budd, one of the law firms retained through the contingency-fee

12  agreement, publishes a statement on its website regarding its role generally in government

13  enforcement suits:

14              An important benefit of this unique and close relationship is that it
                minimizes the burden of litigation on the employees and staff of
15              Public Entities. Bolstered by our superior team members and
                resources, we are able to perform most of the day-to-day litigation
16              tasks, thus helping you stay focused on your important work, free
                from the demands of litigation.  It is our intention to do whatever is
17              required –from the mundane gathering and copying of documents to
                the complex work of full briefings, oral arguments, and trial.  Our
18              focus is fully managing the litigation so that you, the Public Entity,
                can carry on the critical business of representing your community
19              without distractions.

20  *Id.* ¶ 27. ABMC alleges this statement showed the law firms' desire to minimize DA Heryford's

21  role in the UCL Suit. *Id.*

22         E.      Procedural History and Claims Raised in this Case

23              ABMC filed the  complaint in this case on February 16, 2016.  ECF No. 1.  On

24  March 7, 2016, ABMC filed a first amended complaint (FAC), on which this action is now

25  proceeding.  ECF No. 12.  On March 25, 2016, the DA moved to dismiss ABMC's complaint.

26  /////

27  /////

28  /////

1    Mot.  ABMC filed an opposition, Opp'n, ECF No. 25, and DA Heryford replied, Reply, ECF No.

2    30.  ABMC also filed a motion for summary judgment, which is currently pending.  ECF No. 13.

3    Additionally, the United States Chamber of Commerce and the Pharmaceutical Research and

4    Manufacturers of America filed a motion for leave to file a brief as Amici Curiae in support of

5    ABMC's motion for summary judgment.  ECF No. 18.  For reasons explained below, the court

6    DENIES ABMC's summary judgment motion and Amici's motion as MOOT.

7            In the first amended complaint, ABMC alleges the contingency-fee agreement,

8    which gives Barron & Budd a financial stake in the outcome of the UCL Suit, infringes on its

9    Fourteenth Amendment due process right to an impartial trial.  FAC ¶ 59.  ABMC seeks (1) a

10   declaration that DA Heryford violated its due process right; (2) an injunction barring DA

11   Heryford from retaining counsel under the contingency-fee agreement; and (3) costs of suit and

12   attorneys' fees.  *Id.* ¶¶ 69(a)–(d).  DA Heryford moves to dismiss, arguing (1) ABMC lacks

13   standing to bring the suit; and alternatively (2) ABMC does not allege facts sufficient to state a

14   claim upon which relief can be granted.  *See generally* Mot.  ABMC opposes the motion, arguing

15   (1) it has standing; and (2) it has alleged facts sufficient to overcome the motion to dismiss.  *See*

16   *generally* Opp'n.  In the reply, DA Heryford reiterates his original arguments while addressing

17   ABMC's opposition.  Reply at 4–12.

18   II.       LEGAL STANDARD

19           Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

20   dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

21   dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

22   under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

23   1990).

24           Although a complaint need contain only "a short and plain statement of the claim

25   showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to survive a motion

26   to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

27   claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

28   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include something

4

1   more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or "'labels and

2   conclusions' or 'a formulaic recitation of the elements of a cause of action. *Id.* (quoting

3   *Twombly*, 550 U.S. at 555). Determining whether a complaint will survive a motion to dismiss

4   for failure to state a claim is a "context-specific task that requires the reviewing court to draw on

5   its judicial experience and common sense." *Id.* at 679. Ultimately, the inquiry focuses on the

6   interplay between the factual allegations of the complaint and the dispositive issues of law in the

7   action. *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

8          In making this context-specific evaluation, this court must construe the complaint

9   in the light most favorable to the plaintiff and accept as true its factual allegations. *Erickson v.*

10  *Pardus*, 551 U.S. 89, 93–94 (2007). This rule does not apply to "'a legal conclusion couched as a

11  factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986), nor to "allegations that

12  contradict matters properly subject to judicial notice" or to material attached to or incorporated by

13  reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988–89 (9th Cir.

14  2001). A court's consideration of documents attached to a complaint or incorporated by reference

15  or matter of judicial notice will not convert a motion to dismiss into a motion for summary

16  judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003); *Parks Sch. of Bus. v.*

17  *Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *cf. Van Buskirk v. Cable News Network, Inc.*,

18  284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on

19  motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

20  III.   DISCUSSION

21         As noted, DA Heryford seeks to dismiss ABMC's first amended complaint on two

22  grounds: (1) ABMC lacks standing to bring its claims, Mot. at 21, and (2) ABMC has not

23  sufficiently alleged a Fourteenth Amendment due process violation, *id.* at 11. ABMC opposes the

24  motion, asserting (1) it has standing to bring suit against DA Heryford, Opp'n at 19, and (2) it has

25  adequately alleged a due process violation, *id.* at 9. These arguments are addressed in turn.

26         A.     Standing

27         DA Heryford contends ABMC lacks standing to "interfere with its opponent's

28  selection of attorneys," and thereby does not show it has suffered an "injury in fact," as required

5

1  for standing.  Mot. at 21.  ABMC argues it has standing, for it is "being compelled to defend itself

2  in an inherently biased quasi-criminal proceeding in violation of its due process right."  Opp'n at

3  19.

4          The requirements for standing are (1) the plaintiff must have suffered an "injury in

5  fact," (2) there must be a "causal connection between the injury and the conduct complained of,"

6  and (3) it must be likely that the injury will be redressed by a favorable decision.  *Lujan v.*

7  *Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).  To find an "injury in fact," there must be

8  "an invasion of a legally protected interest which is (a) concrete and particularized . . . and

9  (b) actual or imminent, not conjectural or hypothetical."  *Id.* at 560 (internal citations and

10 quotation marks omitted).

11         With respect to standing, DA Heryford mischaracterizes ABMC's claims.  ABMC

12 alleges the contingency-fee agreement, not the DA's choice of contingency-fee counsel, violates

13 its due process right.  Opp'n at 21.  In ABMC's view, the contingency-fee agreement creates an

14 inherent prejudice in the underlying UCL Suit by giving private counsel a pecuniary interest in

15 the outcome of the case, making it unlikely ABMC would receive a fair trial.  *Id.* at 6, 14.  A

16 personal interest in the litigation extraneous to a government lawyer's official functions may

17 tempt him or her to pursue an action, even where it is not feasible or justifiable to do so.  *Cf. City*

18 *& Cty. of S.F. v. Philip Morris* (*Philip Morris*)*, Inc.*, 957 F. Supp. 1130, 1135 (N.D. Cal. 1997)

19 (discussing necessity of barring contingency fee agreements where government lawyer gains a

20 personal interest in the litigation extraneous to his or her official functions).

21         Accepting these allegations as true, ABMC has suffered an injury in fact, and will

22 suffer a concrete and ongoing injury.  Moreover, ABMC has demonstrated a causal connection

23 between the injury and the conduct it complains of, because the alleged prejudice flows from DA

24 Heryford's reliance on contingency fees to compensate the attorneys who are prosecuting the

25 UCL Suit.  Finally, a favorable decision would result in DA Heryford's being enjoined from

26 using contingency-fee attorneys in prosecuting the UCL Suit and, therefore, the injury would be

27 redressed.  ABMC has standing.

28

                                                    6

1    The court turns next to DA Heryford's challenge to the adequacy of ABMC's due

2    process claim.

3        B.    Fourteenth Amendment Due Process Violation

4            DA Heryford argues the contingency-fee agreement with Baron & Budd cannot

5    violate the Due Process Clause.  Mot. at 11.  ABMC disputes this, contending the Due Process

6    Clause bars contingency-fee agreements as they apply to the unique features of the UCL Suit.

7    Opp'n at 17.

8            1.    Absence of Binding Ninth Circuit Authority

9            In a relatively recent unpublished opinion, the United States Court of Appeals for

10   the Ninth Circuit discussed the due process implications of a contingency-fee agreement between

11   the City of San Diego and private counsel to bring private tort claims on behalf of the city against

12   a group of business entities.  *In re City of San Diego*, 291 F. App'x 798, 799 (9th Cir. 2008).

13   The court held the City was allowed to obtain contingency-fee private counsel to bring the tort

14   claims.  *Id.*  Here, the UCL Suit is not a private claim brought on behalf of Trinity County as an

15   "ordinary party . . . simply enforcing its own contact and property rights against individuals. . .

16   that allegedly have infringed upon those interests," but instead is brought on behalf of the People

17   of California.  *See* Mot. at 21; *Santa Clara*, 50 Cal. 4th at 54.  Accordingly, even as it is not

18   binding on this court, the *City of San Diego* case also is distinguishable.  *See* Ninth Circuit Rule

19   36–3; *Johnson v. Nevada* ex rel. *Bd. of Prison Comm'rs*, No. 11-00487, 2013 WL 5428423, at *7

20   (D. Nev. Sept. 26, 2013) (under Ninth Circuit Rule 36–3, unpublished Ninth Circuit opinions

21   have "only persuasive rather than authoritative or precedential value"); *see also Gray v. Astrue*,

22   No. 11–294, 2012 WL 4097762, at *9 (D. Idaho Sept. 17, 2012) (same).

23           2.    California Supreme Court *Clancy* and *Santa Clara* Decisions

24           Absent controlling authority from this circuit, the court looks to decisions from

25   other jurisdictions that discuss the requirements of due process when public entities engage

26   private counsel on a contingency-fee basis.  The leading analyses can be found in two California

27   Supreme Court cases: *People ex rel. Clancy v. Superior Court* (*Clancy*), 39 Cal. 3d 740 (1985)

28   and *County of Santa Clara v. Superior Court* (*Santa Clara*), 50 Cal. 4th 35 (2010).  *See, e.g.,*

7

1    *In re City of San Diego*, 291 F. App'x at 799–800; *Philip Morris*, 957 F. Supp. at 1135; *Valley v.*

2    *Newmont Mining Corp.*, No. 04–00149, 2007 WL 4166238 at *1 (E.D. Cal. Nov. 20, 2007);

3    *Merck Sharp & Dohme Corp. v. Conway* (*Merck I*), 861 F. Supp. 2d 802, 811–814 (E.D. Ky.

4    2012).

5         In *Clancy*, the City of Corona, California hired a private attorney on a

6    contingency-fee basis to bring a civil public nuisance abatement suit against an adult bookstore

7    after several attempts to shut it down, including the City's adoption of two ordinances purportedly

8    regulating adult bookstores. 39 Cal. 3d at 743. In evaluating the constitutionality of the

9    contingency-fee agreement, the state Court first reviewed a prosecutor's responsibilities in a

10    criminal case as a point of reference, noting a prosecutor does not merely represent an ordinary

11    party to a controversy, but instead is the representative of a "sovereignty whose obligation to

12    govern impartially is as compelling as its obligation to govern at all; and whose interest,

13    therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done."

14    *Id.* at 746.

15         The state Court observed a prosecutor's duty of impartiality, or "neutrality," stems

16    from two fundamental aspects of his employment: (1) the obligation to act with the impartiality

17    required of those who govern; and (2) the obligation to "refrain from abusing that power by

18    failing to act evenhandedly." *Id.* With these principles in mind, the state Court concluded "not

19    only is a government lawyer's neutrality "essential to a fair outcome for the litigants in the case in

20    which he is involved, it is essential to the proper function of the judicial process as a whole." *Id.*

21         The state Court then held the neutrality rules applicable to criminal prosecutors

22    were equally applicable to government attorneys prosecuting certain civil cases, including private

23    attorneys who step into the shoes of government lawyers. *Id.* at 746–47. It clarified that public

24    nuisance abatement suits belong to the "class of civil actions" in which an attorney who

25    represents the government must be absolutely neutral. *Id.* at 748. As such, the state Court

26    concluded contingency-fee agreements were "antithetical to the standard of neutrality that an

27    attorney representing the government must meet," and thereby disqualified the private attorney

28    from representing the government in the civil nuisance abatement action. *Id.* at 750.

1        Twenty-five years later, in *Santa Clara*, the California Supreme Court relied on

2   *Clancy* in discussing the due process implications of another public nuisance abatement action

3   brought by several public entities against numerous businesses that manufactured lead paint.

4   50 Cal. 4th at 43.  The public entities were represented by government attorneys as well as private

5   law firms through several contingency-fee agreements, and the defendants moved to bar the

6   County of Santa Clara's use of such agreements.  *Id*.  Although *Clancy* and *Santa Clara*

7   addressed the same sort of civil public nuisance abatement issue, the Court in *Santa Clara* held

8   the facts before it did not require barring the contingency-fee agreement.  *Id.* at 54.

9        In distinguishing *Clancy*, the *Santa Clara* Court first discussed the "spectrum of

10  neutrality required of a government attorney."  *Id.* at 55.  At one end of this spectrum, absolute

11  neutrality was required, which meant that contingency-fee agreements were categorically barred.

12  *Id.* at 51–52.  At the other end of the spectrum, where the government was simply enforcing its

13  own contract and property rights, no neutrality was needed, and the government could enter in

14  contingency-fee agreements without violating the Due Process Clause.  *Id.* at 55.  For the *Santa*

15  *Clara* Court, *Clancy* fell at the end of the spectrum requiring absolute neutrality, while *Santa*

16  *Clara*  fell in the middle.  *Id.* at 54–55.

17       The *Santa Clara* Court discussed three factors *Clancy* relied on to decide that

18  absolute neutrality was required.  *Id.* at 53.  First, the *Clancy* Court looked at the city's repeated

19  efforts to shut down the bookstore long before it hired private counsel.  *Id.* at 53.  This history

20  revealed a "profound imbalance between the institutional power and resources of the government

21  and the limited means and influence of the defendants—whose vital property rights were

22  threatened."  *Id.*  Second, the *Clancy* Court analogized the public nuisance abatement action in

23  that case to an eminent domain action, a type of proceeding in which the state Court had

24  previously concluded government attorneys must be unaffected by personal interests such as a

25  pecuniary incentive in bringing suit against the defendant.  *Id.* at 57, 49 (citing *City of L.A. v.*

26  *Decker*, 18 Cal. 3d 860 (1977)).  To the state Court, the abatement of a public nuisance posed by

27  a bookstore involved a weighing of values, much like an eminent domain proceeding.  *Id.* at 50.

28  On balance, *Clancy* concluded absolute neutrality was needed because the store owner and public

9

1   had a First Amendment interest in selling and purchasing protected material, respectively.  *Id.*

2   Given the values implicated, "any financial arrangement that would tempt the government

3   attorney to tip the scale cannot be tolerated."  *Id.*  Third, the *Clancy* Court noted the suit

4   threatened ongoing business activity, *id.* at 54, and could trigger a criminal prosecution of the

5   owner of the property, *id.* at 50.  Taken together, these three considerations warranted a "delicate

6   weighing of values on the government attorney's part, much like a criminal suit," and thereby

7   required disqualification of a private attorney with a pecuniary interest in the outcome of the suit.

8   *Id.* at 50, 54.

9           None of these factors were implicated in *Santa Clara*.  *Id.* at 55.  There was no

10   threat to the defendants' legitimate business activities because manufacturing lead paint had been

11   illegal since 1978.  *Id.*  The suit posed no threat to constitutional rights because no

12   constitutionally protected interest was enjoined or implicated by any remedy in the case.  *Id.*

13   Finally, the court saw no threat of criminal liability because the statute of limitations had run on

14   criminalizing the manufacture of lead paint.  *Id.*  At the same time, the case did not fall to the

15   other end of the spectrum where contingency-fee agreements were allowable without question.

16   Unlike an "ordinary civil case," *Santa Clara* involved government attorneys appearing as

17   representatives of the public, so the concerns identified in *Clancy* as inherent in a criminal

18   prosecution were implicated in *Santa Clara*.  *Id.* at 55.  This public representation, combined with

19   the absence of any other *Clancy* considerations, placed *Santa Clara* in the middle of the neutrality

20   spectrum.  *Id.* at 55.

21           In this context, the *Santa Clara* Court had to decide what due process required.

22   *See id.* at 57.  Because the nuisance abatement action was prosecuted on behalf of the public, the

23   prosecuting attorneys were subject to the "heightened standard of ethical conduct applicable to

24   public officials acting in the name of the public—standards that would not be invoked in an

25   ordinary civil case."  *Id.*  In such cases, a "government attorney prosecuting a public action on

26   behalf of the government must not be motivated solely by a desire to win a case, but instead owes

27   a duty to the public to ensure that justice will be done."  *Id.*  In following *Clancy*, the *Santa Clara*

28   Court held that under this heightened standard, governmental attorneys needed to control and

1   supervise the litigation, for such control would override private counsel's pecuniary interest in the

2   outcome of the case as well as the conflict between personal interests of counsel, the defendant,

3   and the general public.  *Id.*  Thus, for middle-of-the-neutrality-spectrum cases, the touchstone due

4   process inquiry was whether the government attorney had control over the case when he or she

5   worked with private counsel under a contingency-fee agreement.  *Id.*

6          To establish control, the state Court held contingency-fee agreements must provide

7   that (1) the public-entity attorneys would retain complete control over the course and conduct of

8   the case; (2) government attorneys would retain a veto power over any decisions made by outside

9   counsel; and (3) a government attorney with supervisory authority would be personally involved

10  in overseeing the litigation.  *See id.* at 64.  These provisions were neither exhaustive nor binding

11  in every case.  *Id.* ("The unique circumstances of each prosecution may require a different set of

12  guidelines for effective supervision and control of the case, and public entities may find it useful

13  to specify other discretionary decisions that will remain vested in government attorneys.").

14         Against this backdrop, the Court in *Santa Clara* held several of the contingency-

15  fee agreements before it were deficient because they did not contain specific provisions regarding

16  retention of control and division of responsibility.  *Id.* at 65.  Because other contingency-fee

17  agreements were not provided in the record for the court to review, the case was remanded for

18  determination of the sufficiency of those agreements and to allow private counsel to revise them.

19  *Id.*

20              3.      Post-*Santa Clara* Decisions

21         Numerous cases after *Santa Clara*, including several cases from district courts

22  within the Ninth Circuit, have adopted the California Supreme Court's neutrality-spectrum

23  analysis.  For example, in *In County of San Francisco v. Philip Morris, Inc.*, the district court

24  concluded that a RICO claim brought by the government against corporate defendants with the

25  assistance of private counsel fell in the middle of the neutrality spectrum.  *See* 957 F. Supp. at

26  1135–36.  Applying the *Santa Clara* factors, the court found that because the private law firm

27  acted as co-counsel, with government attorneys retaining full control over the litigation, there was

28  no Due Process Clause violation.  *Id.*  Similarly, in *City of Grass Valley v. Newmont Mining*

1  *Corp.*, No. 04–00149, 2007 WL 4166238, at *1 (E.D. Cal. Nov. 20, 2007), the court denied a

2  corporate defendant's motion to disqualify the city's contingency-fee counsel because the

3  defendant did not counter the city's showing that private counsel was acting as co-counsel with a

4  government attorney and was not appearing in the place of public counsel.

5      Although not binding, the Eastern District of Kentucky's decision in *Merck I*

6  presents a case identical in all material aspects to the case before this court.  In *Merck I*, the state

7  Attorney General (AG) retained contingency-fee counsel to assist with a state consumer

8  protection suit against a corporate defendant.  861 F. Supp. 2d at 806.  The defendant filed suit for

9  injunctive and declaratory relief, alleging the AG "delegated [its coercive powers] to private

10 lawyers having a clear, direct and substantial financial stake in the outcome of [the suit], which it

11 alleged violated its [d]ue [p]rocess rights." *Id.* at 807.

12      The court in *Merck I* tracked *Santa Clara* to conclude the consumer protection suit

13 before it fell in the middle of the neutrality scale.  *See id.* at 814.  This was because, while the

14 civil penalties sought in the consumer protection suit were intended to "punish and deter" and

15 were thus penal in nature, the case did not implicate *Clancy*'s considerations with respect to

16 constitutional implications of the activity regulated, analogies to eminent domain or public

17 nuisance suits, or threats to on-going business activity.  *See id.* at 813–14.  Thus, as in *Santa*

18 *Clara*, the due process inquiry turned on whether the AG controlled the litigation.  *Id.* at 814.

19 After looking at the contingency-fee agreements, as well as other evidence before the court that

20 shed light on the balance of power between the AG and private counsel, *id.* at 814–15, the court

21 concluded the AG controlled the litigation, and therefore rejected the defendant's due process

22 claim and denied its motion for injunctive and declaratory relief.  *Id.* at 814–15, 817.

23          4.      Application of *Santa Clara* to this Case

24      This court is persuaded that the neutrality spectrum analysis applies to this case.

25 The court therefore first determines whether the government's underlying suit is criminal, civil, or

26 civil but penal in nature.  *Merck I*, 861 F. Supp. at 814.  DA Heryford brings the UCL Suit against

27 ABMC under California Business and Professions Code sections 17200, *et. seq.*, alleging ABMC

28 engaged in "deceptive marketing and sales practices" in connection with "fee-based ancillary

1  products and services to its California credit cardholders." ECF No. 12-1 at 3.  Although civil

2  penalties may be assessed under section 17200, the law contains no criminal provisions, and

3  remedies are generally limited to injunctive relief and restitution.  *Korea Supply Co. v. Lockheed*

4  *Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  DA Heryford seeks statutory penalties, which, as

5  his counsel conceded at the hearing, are intended to punish and deter.  *See Beaver v. Tarsadia*

6  *Hotels*, ___F. 3d ___, No. 15-55106, 2016 WL 909163, at *3 (9th Cir. Mar. 10, 2016) (the

7  unlawful prong proscribes the kinds of unlawful business practices punishable under the statute);

8  *see also In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (UCL is intended to deter unfair

9  business practices).  The court finds the UCL Suit against ABMC is civil but penal in nature and

10 thus implicates the requirement of neutrality.  *See Merck I*, 861 F. Supp. 2d at 814.

11      ABMC argues this case falls on the same end of the scale as *Clancy*, contending

12 ABMC's First Amendment interests are implicated, given the attack on its  marketing to

13 cardholders.  Opp'n at 14.  ABMC cites no case law to support a conclusion that conduct giving

14 rise to an action under the UCL, targeting deceptive marketing of ancillary products and services,

15 is protected by the First Amendment, in contrast to the well-established First Amendment

16 protection afforded to the *Clancy* plaintiff's right to distribute adult materials.[1]  ABMC's

17 conclusory assertion that the UCL Suit targets protected commercial speech is insufficient,

18 without more, to support a finding that constitutional concerns are implicated by the litigation.

19 The court need not give weight at this stage to such legal conclusions cast in the form of factual

20 assertions.  *See Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011).  The level of neutrality

21 implicated here is similar to that in *Santa Clara* and *Merck I*.

22      The second question, then, is who controls the UCL Suit against ABMC.  *See*

23 *Merck I*, 861 F. Supp. 2d at 815.  To answer this question, the court looks first at the contingency-

24 fee agreement itself, attached to the operative complaint, and then to other alleged facts to

25 determine whether private counsel "have ever engaged in any conduct that invaded the sphere of

26 _____

27      [1] For commercial speech to be protected by the First Amendment, it must at least concern
some lawful activity and not be misleading.  *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv.*
*Comm'n of New York*, 447 U.S. 557, 557 (1980).

28

1    control" reserved to DA's Heryford's office.  *Id.*; *see also Lee v. City of L.A.*, 250 F.3d 668, 688

2    (9th Cir. 2001) (court may consider attached "material which is properly submitted as part of the

3    complaint" on motion to dismiss without converting motion into one for summary judgment)

4    (internal citations omitted).

5            DA Heryford asserts the contingency-fee agreement requires he maintain

6    "complete control" over the litigation.  Mot. at 16.  ABMC alleges DA Heryford's participation in

7    the UCL Suit is "significantly diminished or nonexistent" as a result of the contingency-fee

8    agreement.  FAC ¶ 24.   ABMC points to several provisions in the contract, including its

9    characterization of the law firms as "independent contractors" with the "authority and

10   responsibility to control and direct the performance and details of the work and services required

11   under this Agreement."  FAC ¶ 23; Opp'n at 8.  ABMC also points out that the law firm's work is

12   subject merely to the DA's "general right" to "inspect work in progress to determine whether, in

13   the District Attorney's opinion, the services are being performed by [Barron & Budd] in

14   compliance with this Agreement."  *Id.*

15           The court disagrees that the contingency-fee agreement diminishes the DA's

16   control over the UCL Suit.  The beginning of the agreement states Barron & Budd is "authorized

17   and directed to assist the District Attorney in making claims for Trinity County, and to prosecute

18   such claims through assessment, enforcement, collection and all necessary and reasonable appeals

19   as the District Attorney shall direct, and to enforce all judgments and settlements as shall be

20   obtained."  ECF No. 12-1 at 30.  To the extent Barron & Budd provides legal services, it is for

21   "representation and assistance."  *Id.*  Additionally, the contract makes clear DA Heryford does not

22   "relinquish [his] constitutional or statutory authority or responsibility through this Agreement,"

23   and that he has "sole and final authority to initiate and settle this litigation on behalf of Trinity

24   and its citizens, and retains final authority over all aspects of the litigation."  *Id.*  Read as a whole,

25   the agreement provides that DA Heryford controls the litigation, with Baron & Budd serving as

26   co-counsel.  Accordingly, the fee agreement does not violate ABMC's due process rights.  *See*

27   *Merck I*, 861 F. Supp. 2d at 815 ("[C]ontingency-fee agreements can be constitutional so long as

28

                                        14

1    the Office of Attorney General retains absolute and total control over all critical decision-

2    making.").

3            Notwithstanding the contingency-fee agreement's written provisions, other factual

4    allegations may show Barron & Budd, and not DA Heryford, controls the litigation.  *Id.* ("Even

5    though there is an explicit clause reserving the AG's authority over the [] litigation, the Court

6    may ask whether the private counsel have 'ever engaged in any conduct that invaded the sphere

7    of control' reserved to the AG's office.").  As noted, ABMC does allege DA Heryford made

8    public comments at a meeting with the Trinity County Board of Supervisors, in which the DA

9    characterized the relationship with Barron & Budd as "a lot of upside with not a lot of downside."

10   FAC ¶ 24.  ABMC also alleges DA Heryford told a newspaper that because of the contingency-

11   fee arrangement, prosecution of the UCL Suit would not "interfere" with his caseload, and that

12   the suit would not cost Trinity County or his office any money because it was "being handled by

13   the law firms."  FAC ¶ 26.  Lastly, ABMC cites to Barron & Budd's website where counsel states

14   their focus is "fully managing the litigation."  FAC ¶ 27.

15           These allegations do not support a finding that DA Heryford has ceded control of

16   the UCL Suit to Barron & Budd.  Rather, DA Heryford maintains final control over the direction

17   of the litigation.  FAC ¶ 25.  As to the newspaper statements, nonparticipation in the legwork of a

18   case does not mean a lack of control.  *See Merck Sharp & Dohme Corp. v. Conway* (*Merck II*),

19   947 F. Supp. 2d 733, 748 (E.D. Ky. 2013).  The same reasoning applies to the statements on

20   Barron & Budd's website: when read in context, the firm says it will "provide assistance" to the

21   DA or "advis[e]" the DA on matters in the litigation.  FAC ¶ 27.

22           ABMC's allegations, taken together, do not support the conclusion that DA

23   Heryford does not control the underlying UCL Suit.

24           5.    Conclusion

25           The underlying UCL Suit against ABMC is civil but penal in nature such that the

26   neutrality principle is implicated.  However, the complaint's allegations are insufficient to show

27   that DA Heryford does not control litigation of the UCL Suit.  The court concludes ABMC does

28

15

1  not state a claim for violation of its Fourteenth Amendment due process rights.  Accordingly, DA

2  Heryford's motion to dismiss is GRANTED.

3  IV.    LEAVE TO AMEND

4           In dismissing for failure to state a claim, "a district court should grant leave to

5  amend even if no request to amend the pleading was made, unless it determines that the pleading

6  could not possibly be cured by the allegation of other facts."  *Doe v. United States*, 58 F.3d 494,

7  497 (9th Cir. 1995).  Because the complaint's shortcomings might be cured by allegations

8  regarding DA Heryford's control over the litigation, ABMC is granted leave to amend.  ABMC

9  shall file the second amended complaint within fourteen (14) days of the date of this order.

10  ABMC's motion for summary judgment, however, ECF No. 13, is DENIED as MOOT as it relies

11  on the now dismissed first amended complaint.  Additionally, Amici's motion to file a brief in

12  support of ABMC's now dismissed motion for summary judgment is also DENIED as MOOT.

13           This resolves ECF Nos. 13, 18, and 21.

14           IT IS SO ORDERED.

15   DATED:  June 2, 2016.

16

17  _____
    UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28